UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14 CR 63 SNLJ (ACL) |
| | ) | |
| BRETT RAYMOND SCHERMERHORN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned is Defendant Brett Raymond Schermerhorn's Motion to Suppress (Doc. 32) evidence obtained as a result of the installation of a GPS device on his vehicle. Schermerhorn argues that the Warrant that authorized the installation of the GPS device was not supported by probable cause. To support this claim, he alleges that the Affidavit used to secure the GPS Warrant "contained misleading facts and omitted crucial facts" (Doc. 42 at 2) and that the good faith exception does not apply, *id.* at 8. Schermerhorn's second claim is that the search of his vehicle following a traffic stop was unlawful, because it was the result of information obtained from the GPS tracking device. *Id.* at 11-13. Lastly, Schermerhorn claims the reasons for the traffic stop were "suspicious" thereby suggesting that it was an unlawful traffic stop. *Id.* at 13. The Government filed a Brief in Opposition to Schermerhorn's claims. (Doc. 34) Following an evidentiary hearing (Doc. 39), both parties submitted memoranda. (Docs. 42, 43)

In consideration of the pleadings identified above, as well as all exhibits admitted into evidence, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's Motion to Suppress be denied.

## I. Findings of Fact

Sometime in September 2013, the DEA received information from an informant that a man named Huy Nguyen was selling quantities of marijuana and he lived in the Cape Girardeau, Missouri area. The informant also identified where Nguyen worked and shared that Nguyen had recently posted images on social media websites that depicted a marijuana growing operation and large sums of U.S. currency. DEA agents set up fake social media accounts, "friended" Nguyen, and then confirmed that photos had been posted on Nguyen's site that showed him smoking marijuana inside a marijuana grow operation, marijuana packaged for distribution, and a large amount of U.S. currency on a table. A second informant confirmed where Nguyen worked and that Nguyen drove a black Nissan Maxima, as well as the Arkansas license plate number for the vehicle.

On October 31, 2013, DEA agents began surveillance efforts of Nguyen at his place of employment. DEA Task Force Officer Alan Nobles observed that the Nissan Maxima described by the second informant was parked at Nguyen's place of employment at 11:30 a.m. Additional officers were called to assist with surveillance. At approximately 2:04 p.m., a blue Honda Civic pulled into the parking lot of the business. Nguyen was observed exiting the business where he reportedly worked and made contact with the driver of the Civic, a white male. Following a brief conversation, Nguyen went back into the store. Nguyen then came out of the store again and entered the Civic. The next thing

the officers observed was the Civic pulling out of the parking lot; they followed the car. The officers ran a records check for the license on the Civic and learned that it was registered to Brett Raymond Schermerhorn.

The Civic eventually travelled to an apartment building in Cape Girardeau and parked there at approximately 3:27 p.m. Both the driver of the car and the passenger, Nguyen, exited the car and entered the apartment building. Roughly ten minutes later, the driver and Nguyen exited the building and got back into the Civic. Before sitting in the front passenger seat, Nguyen placed a duffel bag into the trunk of the Civic. Nguyen was not carrying the duffel bag when he and Schermerhorn went into the building.

The Civic was followed all the way to Blytheville, Arkansas. Around the time the Civic arrived in Blytheville, the surveillance officers lost sight of the Civic. Approximately fifteen minutes later, the officers located the Civic parked in front of a residence. Nguyen was standing in the street talking on his cell phone, several black males were on the front porch of the residence, but the driver was not seen. Additionally, Officer Nobles testified that he does not know what happened to the duffel bag that was placed into the trunk of the Civic, or what was in the duffel bag.

Officer Nobles contacted the local DEA field office and learned that the residence where the Civic was parked was the focus of an ongoing investigation and was "believed to be at the center of a large scale marijuana and methamphetamine distribution operation." (Gov't. Ex. #2 at ¶ 10.)

Based solely on the aforementioned information, Officer Nobles applied for a state search warrant to attach a GPS tracking device to the blue Honda Civic identified above.

Officer Nobles' Affidavit stated that the Civic was registered to a man named Brett Raymond Schermerhorn. The introduction of the Affidavit provided that Officer Nobles had "probable cause to believe that the driver and/or occupants of a certain motor vehicle have been involved in various narcotics related crimes." *Id.* at ¶ 2.

On November 25, 2013, an Assistant Prosecutor prepared the Search Warrant Application (Gov't. Ex. #1) and Affidavit (Gov't Ex. #2) for the GPS warrant as Officer Nobles relayed the details of the investigation, including providing a written synopsis of the case. When the search warrant package was complete, the Assistant Prosecutor asked Officer Nobles to review it for accuracy. Officer Nobles testified that he believed the information contained in his Affidavit was true. Officer Nobles indicated that after the search warrant package was prepared, he and the Assistant Prosecutor met with the state court judge. The Judge reviewed the search warrant package and then signed the Search Warrant, which provided, in part:

> WHEREAS, an application for a search warrant in writing duly verified by oath, has been filed with the undersigned Judge of this Court, stating upon information and belief that the driver and/or occupants of a certain motor vehicle have been involved in various narcotics related crimes. These crimes include delivery of marijuana, a controlled substance, and possession of marijuana with intent to distribute. Subjects believed to have been involved in these crimes have been identified as Brett Raymond Schermerhorn and Huy T. Nguyen. It is further believed that these subjects have utilized, and are continuing to utilize a. . .2013 Honda Civic; blue in color; Missouri license plate no. WG1-U4A; registered to Brett Raymond Schermerhorn. . .

> WHEREAS, the Judge of this Court, from the sworn allegations of said Complaint and from the supporting written affidavit of Alan Nobles filed therewith, has found probable cause to believe the allegations of the com-

plaint to be true and that probable cause exists for the issuance of a search warrant herein.

(Gov't. Ex. #3 at p. 1.)  The Search Warrant also stated that the GPS device should be installed within ten days of the Warrant being issued and that law enforcement officers were authorized to track the movements of the Civic for a thirty day period.  *Id*. at p. 2.

Officer Nobles' suppression hearing testimony revealed that the same day the warrant was received, a GPS tracking device was attached to Schermerhorn's blue Honda Civic, while it was parked near his apartment building.  Officer Nobles' testimony also revealed that prior to applying for the search warrant he knew that the *driver of the Civic during the October 31, 2013 trip to Blytheville was Schermerhorn*[1] and that *the apartment building where Schermerhorn and Nguyen had stopped before traveling to Blytheville was in fact where Schermerhorn lived.*[2]  Furthermore, Officer Nobles had received *toll records for Nguyen's phone that revealed Nguyen and Schermerhorn had 213 phone contacts with each other in a thirty day period*.  Officer Nobles testified that the information regarding the phone contacts was beneficial, because it showed a direct relationship between Schermerhorn and Nguyen (i.e., they communicated frequently and were likely confidantes), however, the Assistant Prosecutor did not include that information in the Affidavit.  Officer Nobles testified that his law enforcement experience also led him to believe that the short duration of the October 31, 2013 trip to

---

[1]  On cross-examination, Officer Nobles testified that Schermerhorn was the driver of the Civic on October 31, 2013.

[2]  On direct examination, Officer Nobles stated that after Nguyen got in the Civic, he was driven "to the Friedheim, Missouri area.  From there they returned to Cape Girardeau, they returned to Mr. Schermerhorn's apartment in Cape Girardeau, Missouri."

Blytheville was indicative of drug trafficking, as the Civic remained in Blytheville for only an hour or so.

Five days after the GPS tracking device was installed, November 30, 2013, Officer Nobles checked the location of Schermerhorn's Civic and learned that it was travelling south on Interstate 55, which was the route used on October 31, 2013 to go to Blytheville. Officer Nobles continued to monitor the location of the Civic. Around 6:47 p.m., the Civic was near the residence in Blytheville that was believed to be involved in narcotics trafficking. When the GPS tracking device reflected that the Civic was returning to Cape Girardeau, Officer Nobles contacted a Missouri State Highway Patrol Trooper who was on duty and a canine officer. At approximately 8:02 p.m., Officer Nobles asked the Trooper to be on the lookout for Schermerhorn's Civic, because Officer Nobles suspected that Schermerhorn would be carrying controlled substances.

Around 9:52 p.m., the Trooper observed Schermerhorn's Civic pull onto Interstate 55 in the northbound lane from Highway 62 in Miner, Missouri. The driver of the Civic failed to signal when entering the northbound lane and veered quickly into traffic. As the Trooper worked to catch up to the Civic, the car veered across the centerline and then about three feet onto the shoulder of the roadway. Once the Trooper caught up to the Civic, it was traveling only fifty miles an hour even though the speed limit was seventy. The Civic then accelerated rapidly up to 82 miles per hour. At that point, the Trooper activated the emergency lights and siren for his patrol vehicle and stopped the Civic. The Trooper testified that the operator of the Civic had violated several state laws, including: improper signaling, improper lane usage, careless and imprudent driving, and speeding.

He further testified that he would have definitely stopped the Civic even if he had not received the phone call from Officer Nobles.

The Trooper approached the Civic and identified Brett Schermerhorn as the driver and sole occupant of the vehicle. The Trooper described Schermerhorn as being lethargic and believed that Schermerhorn may have been under the influence of drugs. The Trooper also noticed a strong odor of raw marijuana and air freshener in the interior compartment of the vehicle. The Trooper testified that air fresheners are commonly used to hide or mask the odor of marijuana. Schermerhorn blamed his erratic driving on the fact he had been texting while driving.

Schermerhorn was asked to accompany the Trooper to his patrol unit. As the Trooper was issuing summonses for traffic violations, he noticed that although Schermerhorn still appeared to be lethargic, "his carotid artery was visibly pulsating in his neck." (Def's. Ex. B at ¶ 4.) Schermerhorn told the Trooper he had come from Sikeston, which the Trooper knew was untrue based on the information provided by Officer Nobles. The Trooper advised Schermerhorn that he noticed a strong odor of marijuana in the Civic and asked for consent to search. Schermerhorn initially granted consent, however, withdrew consent when the Trooper asked Schermerhorn to open the trunk. The Trooper asked Schermerhorn for the key and Schermerhorn's behavior changed from being lethargic to being extremely nervous. Based on Schermerhorn's behavior, the Trooper called for backup.

When the backup officer arrived, the Trooper deployed his canine, Argo, to conduct an exterior sniff of the Civic. Argo gave a passive alert for the presence of

controlled substances by sitting in front of the trunk.  The Trooper retrieved the keys, opened the trunk, and found a duffel bag within a duffel bag that contained several bundles of processed marijuana weighing approximately three pounds (three of the packages were vacuum sealed and one small baggie was not sealed (Def's. Ex. B at ¶ 8)) and a bag containing approximately one-half pound of ice methamphetamine (triple bagged in plastic bags, *id*.).  Schermerhorn was placed under arrest for possession of controlled substances.

The Trooper testified that the recording of the traffic stop was not maintained, because Schermerhorn had been cooperative following the traffic stop and officers had the impression that Schermerhorn intended to cooperate with law enforcement.

Shortly after Schermerhorn's arrest, he was given the *Miranda* warning and interviewed by Officer Nobles.  (Def's. Ex. C)  Schermerhorn admitted that he purchased the drugs that were seized from his trunk earlier that evening in Blytheville and that he had done so at least three times.  *Id.*  He further indicated that he met the Blytheville drug supplier through Nguyen.  *Id.*

Schermerhorn now requests that this Court "exclude all physical evidence obtained from his person and from his vehicle, or order suppression of all evidence seized and obtained from the use of the GPS device."  (Doc. 42 at 13.)

## II. Conclusions of Law

Schermerhorn argues that the Government's use of a GPS device was unconstitutional based on an allegation that the Search Warrant authorizing the installation of the device on his car was not supported by probable cause. (Doc. 42 at 1-8.) In *United States v. Jones*, 132 S.Ct. 945, 949 (2012), the Supreme Court held that the attachment of a GPS device to a motor vehicle is subject to the warrant and probable cause requirements of the Fourth Amendment. Schermerhorn argues that Officer Nobles' Affidavit did not include sufficient information to establish probable cause for the issuance of the GPS Warrant that was attached to his car.

### II.A. Was the GPS Warrant supported by probable cause?

The standard for reviewing the propriety of the issuance of a warrant under the Fourth Amendment is clear. "The Fourth Amendment commands that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.'" *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting U.S. Const. amend. IV). "The sufficiency of a search warrant is. . .determined on the basis of the information before the issuing judicial officer." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986). "The warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe the evidence, instrumentalities or fruits of a crime, contraband,. . .may be found in the place to be searched." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998).

Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place.

*See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Whether probable cause has been established involves the practical common sense evaluation of the totality of the circumstances.  *Gates*, 462 U.S. at 238.  All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the location to be searched.  *Gates, supra.*  Also, affidavits should not be read in a hypertechnical manner.  *See United States v. Ventresca*, 380 U.S. 102 (1965).

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States*, 338 U.S. 160, 175 (1979).

Probable cause may be found:  in hearsay statements from reliable persons, *Gates*, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959); "by the observations of trained law enforcement officers or by circumstantial evidence," *United States v. Terry*, 305 F.3d 818, 822-23 (8th Cir. 2002), citing *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999) (citations omitted).  While these are some of the ways in which probable cause is commonly established, they are by no means all-inclusive. Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented.  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  "[W]hen reviewing the sufficiency of the. . .affidavit supporting [the

issuance] of a search warrant," great deference is given to a judicial officer's probable cause finding.  *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007), citing *Gates*, 462 U.S. at 236.

It is true that the fact a *known drug dealer* travelled with a driver in a specific car on one occasion to a *known drug supplier's residence* may establish a fair probability that the car will be used to make future trips to facilitate drug trafficking activities.  Those facts alone, however, are not sufficient to establish probable cause to attach a GPS device to the car used on that single occasion.  More information must be provided about the car (it's owner, or the known driver of the car) to establish a relationship between either, the *known drug dealer* and the ***driver of the specific car,*** or the *known drug dealer* and ***the specific car***.  *See generally*, *United States v. Simpkins*, 914 F.2d 1054, 1057 (8th Cir. 1990).  The only information the Affidavit and Application revealed about the car for which the GPS Warrant was sought is who the car was *registered to* and that a *white male* drove the car on October 31, 2013.

Upon reviewing the Application and attached Affidavit, it is clear that the Judge was not aware of information that Officer Nobles testified about during the suppression hearing, including:

a)      Schermerhorn was the driver of the Civic on October 31, 2013[3];

---

[3]      A reader might assume this since Schermerhorn was the registered owner of the Civic, but the Affidavit simply described the driver of the Civic as a "white male" without further identification.  The fact Schermerhorn was the driver is not stated in the Application or the Affidavit even though the Search Warrant itself includes a statement that Schermerhorn was **identified** as being involved in drug trafficking crimes with Nguyen on the October 31.  (Gov't. Ex. #3 at 1)  The issuing Judge could not consider

b)    the apartment building where "the driver" and Nguyen stopped at before travelling to Blytheville was where Schermerhorn lived; and

c)    toll records for Nguyen's phone revealed that Schermerhorn and Nguyen had 213 communications over a thirty day period.

The undersigned finds that without this information, the GPS Warrant is not supported by probable cause.

The conclusion that the Warrant was not supported by probable cause, however, does not end the inquiry. The Government argues that because the officers executed the GPS Warrant in a good faith belief that it was valid, the exclusionary rule does not require the suppression of evidence. (Doc. 43 at 14-15.)

## II.B.    Does the *Leon* good faith exception to the exclusionary rule apply?

"The ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (citations omitted). The rationale behind the good-faith exception to the exclusionary rule is that no justification exists to exclude evidence "when an officer acting with objective good faith has obtained a search warrant from a judge. . .and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984).

the statement in the Warrant itself, because judges "rel[y] solely upon the supporting affidavit [and application] to issue the search warrant" and are required to consider "only that information which was found within the four corners of the affidavit [and Application]. . .in determining the existence of probable cause." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) (citations omitted).

In the ordinary case, an officer cannot be expected to question the [judge's] probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." . . .Penalizing the officer for the [judg]e's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id*. at 921 (quoting *Stone v. Powell*, 428 U.S. 465, 498 (1976)).

"Under the good-faith exception, evidence seized pursuant to a search warrant issued by a [judge] that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.'" *Id*. (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)) (alteration in original). The good-faith exception does not apply:

[1] if the. . .judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth. . .

[2] where the issuing [judge] wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319[, 327, which was by acting as an "adjunct law enforcement officer" rather than a judicial officer]. . .

[3] based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence unreasonable". . .

[4] . . .[when] a warrant [is] so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the

executing officers cannot reasonably presume it to be valid. . .

*Leon*, 468 U.S. at 923 (internal citations omitted).

Schermerhorn claims that the first and third exceptions to the applicability of the *Leon* good faith rule apply in the instant case (*i.e.*, the judge was misled by false information that caused him to issue the warrant and the officer's reliance was unreasonable because the warrant lacked indicia of probable cause). (Doc. 42 at p. 8.) Each exception will be addressed separately.

**II.B.1.   The first exception to application of the good faith rule does not apply.**

To support his position that the information in Officer Nobles' Affidavit was false or misled the issuing judge (Doc. 42 at p. 8), Schermerhorn claims that Officer Nobles did not provide "the entire picture. . .so the judge could determine if probable cause existed under the 'totality of the circumstances,' not 'part' of the circumstances," *id*. This contention reflects a misunderstanding of the first exception cited in *Leon*.

The first exception to applying the good faith rule was based on the decision in *Franks v. Delaware*, 438 U.S. 154 (1978). *Leon*, 468 U.S. at 923. In *Franks*, the Supreme Court held that a **facially sufficient affidavit** may be challenged on the ground that it used deliberately or recklessly false statements to demonstrate probable cause. 438 U.S. at 168 (emphasis added). The Eighth Circuit has extended *Franks* "to allow challenges to affidavits based on alleged deliberate omissions." *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986). In this case, the undersigned has agreed with Schermerhorn and found that the GPS Warrant was not supported by probable cause,

therefore the Affidavit was not facially sufficient and the first exception cannot be applied. The undersigned will, nevertheless, address the effect of the allegedly omitted information.

The ten separate "facts" (Doc. 42 at pp. 9-10) identified by Schermerhorn are not facts. A common sense reading of the Affidavit, however, results in a reader understanding the claimed "omitted facts." For example, it's not necessary to: state that a suspect has no prior criminal history relating to drug trafficking when no such history exists, or explain that Schermerhorn did not place a duffel bag in the trunk of his car when the affiant explained that someone else placed the duffel bag in the trunk, or explain that the contents of the duffel bag were unknown when the affiant makes no specific suggestion as to what was contained in the duffel bag.

The first nine "facts" identified by Schermerhorn are conclusions or inferences that would be made by a common sense reading of the Affidavit. The tenth "fact" cited by Schermerhorn (Doc. 43 at p. 10) articulates assumptions that Officer Nobles may have made about Schermerhorn's participation in drug related actvity. Although it's true that various assumptions could be made by any reader of the Affidavit as to whether Schermerhorn was or was not inside the Blytheville residence, or that he knew what was in the duffel bag, or that the contents of the duffel bag were drug related, it is clear that Officer Nobles did **not** include any statements in his Affidavit that any of those "assumptions" actually occurred.

Although Schermerhorn alleges that Officer Nobles omitted facts from his Affidavit, he did not allege that Officer Nobles intentionally made deliberately false

statements or that he acted with reckless disregard for the truth, which is what is required to warrant a *Franks* hearing, *see United States v. Williams*, 477 F.3d 554, 557-8 (8th Cir. 2007), and to succeed under the first exception to application of the good faith rule. *Leon*, 468 U.S. at 923. If Schermerhorn had requested a *Franks* hearing based on the aforementioned omitted facts, the undersigned would have denied the request.

As stated above, the undersigned finds that the first exception to the good faith rule does not apply in this case.

### II.B.2.  The third exception to application of the good faith rule does not apply, because Officer Nobles relied in good faith on the validity of the GPS Warrant.

Schermerhorn also claims that a second exception to application of the good faith rule applies by stating "the officer's reliance on the warrant was not in good faith or objectively reasonable." (Doc. 42 at 8) Based on Schermerhorn's arguments in his entire memo, the undersigned believes Schermerhorn intended to engage the third exception to application of the good faith rule, which applies when an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Leon*, 468 U.S. at 923.

The Eighth Circuit has provided the following guidance for addressing the question of whether an officer's reliance on a search warrant is reasonable:

> Under the *Leon* good-faith exception, disputed evidence will be admitted if it
> was objectively reasonable for the officer executing a search warrant to have
> relied in good faith on the judge's determination that there was probable cause
> to issue the warrant. . . In assessing whether the officer relied in good faith
> on the validity of a warrant, we consider the totality of the circumstances,

**including any information known to the officer but not included in the affidavit,**. . .and we confine our inquiry "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization,". . .

*United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (internal citations omitted) (emphasis added). *See also, United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007) (quoting *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001), in turn quoting *United States v. Simpkins*, 914 F.2d 1054, 1057 (8th Cir. 1990)).

Schermerhorn complains that the information in Officer Nobles Affidavit and his investigation did not adequately connect him to known drug related activity. Law enforcement officers view the facts of an investigation "through the lens of [their] police experience and expertise." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). The Supreme Court recognized that "a trained, experienced police officer [may be] able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." *Brown v. Texas*, 443 U.S. 47, 52 at n. 2 (1979) (citations omitted). It has long been recognized that "a police officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas*, 517 U.S. at 700, citing *United States v. Ortiz*, 422 U.S. 891, 897 (1975). Due deference is to be given to inferences drawn from the facts of an investigation by law enforcement officers. *Ornelas*, 517 U.S. at 699.

The nexus required by the Fourth Amendment is that "between the contraband [being sought] and the place to be searched." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). There is not a *per se* rule in the Eighth Circuit that probable cause to

arrest a drug trafficker establishes an inference that there is evidence at his residence. *See United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007). The Eighth Circuit has instead found probable cause in cases where an affidavit contains at least some information connecting the drug activity to the home. *See United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994) In *Luloff*, a suppression motion was denied where the officers not only inferred that evidence of drug trafficking would be at the home of a drug dealer based on their experience, but also included information from reliable witnesses and informants that tended to support the defendant had engaged in repetitive drug trafficking activity with some of the activity taking place in the home to be searched. Here, the undersigned has concluded that the GPS Warrant Application did not give rise to probable cause, because it failed to establish a sufficient nexus between the use of Schermerhorn's car and the suspected drug trafficking activities. The only facts offered were that a known drug dealer (Nguyen) had been a passenger in Schermerhorn's car, which was driven by a white male, on one occasion, to a known drug supplier's residence.

There is substantial precedent in the Eighth Circuit that officers can reasonably rely on search warrants that lack any connection between a drug trafficker and his home, and that the evidence seized is admissible under *Leon*. *See*, *e.g.*, *United States v. Pruett*, 501 F.3d 976, 982 (8th Cir. 2007) (overruled on other grounds) (holding that the warrant application at issue did not specifically mention the presence of criminal activity at defendant's residence but that the executing officers reasonably relied on the warrant); *United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) (holding that an affidavit

failed to establish a connection between a residence and contraband, but that it was not "entirely unreasonable" for the executing officer "to believe that such an inference was permissible."); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) ( holding that executing officers reasonably relied on judge's determination that there was probable cause to search motel room even though search warrant affidavit failed to mention a connection between motel room and criminal activity).

Based on the aforementioned precedent, Officer Nobles made a permissible inference about the likelihood that Schermerhorn's car would be used in future drug trafficking activities, thereby making his reliance on the GPS Warrant reasonable. In addition, Officer Nobles was aware of additional information that was not contained in the Affidavit that strengthened his belief he had probable cause to secure the GPS Warrant and that Schermerhorn was involved in drug trafficking, as follows:

Officer Nobles was an experienced narcotics investigator who knew that Schermerhorn had driven with Nguyen to a known drug supplier's house on October 31, 2013. Officer Nobles had also received information from informants that Nguyen was a drug dealer and corroborated that information to some degree by confirming that pictures on one of Nguyen's social media sites depicted him in a marijuana grow operation. Officer Nobles knew that Schermerhorn was the driver during the October 31 trip and that Schermerhorn and Nguyen stopped at the apartment building where Schermerhorn lived prior to making the trip. From Schermerhorn's apartment building, a duffel bag with unknown contents was obtained and placed in Schermerhorn's trunk by Nguyen. Officer Nobles also knew that during a thirty-day period, Schermerhorn and Nguyen had

213 phone contacts which established a strong relationship between the two. Furthermore, the October 31 trip to Blytheville was short in duration, which led Officer Nobles to believe that the purpose of the trip was likely drug related. Officer Nobles believed his Affidavit was truthful when he presented it to the Judge. Finally, he acted reasonably in attempting to obtain the Warrant, and taking the necessary steps to present the Warrant Application to the Judge.

In this case, the inferences Officer Nobles made based on his training and experience not only amounted to probable cause, they turned out to be true. Five days after securing the GPS Warrant, Schermerhorn made another trip to the Blytheville drug supplier's residence and a substantial quantity of methamphetamine and marijuana was seized from his Civic.

Having considered the totality of the circumstances, the undersigned finds that the GPS Warrant should be upheld under the *Leon* good faith rule, because Officer Nobles' knowledge of Schermerhron's involvement and connection to Nguyen, together with the information contained in his Affidavit, is sufficient to show his reasonable reliance on the issuing judge's determination of probable cause.

In summary, the undersigned concludes that even though the GPS Warrant was not supported by probable cause, the evidence seized pursuant to the Warrant is nonetheless admissible pursuant to the good-faith exception established under *Leon*.

## II.C.   Traffic Stop of Schermerhorn's Civic was lawful.

On November 30, 2013, a Missouri State Highway Patrol Trooper stopped Schermerhorn's vehicle on Interstate 55 northbound for multiple traffic violations. He

ultimately issued traffic tickets for two of the violations--Failing to Drive on the Right

Half of the Roadway When Roadway was of Sufficient Width and Exceeding the Posted

Speed Limit. Schermerhorn's final claim is that "without the use of the information

gained from a GPS device installed without probable cause, Trooper Sanders would not

have been on the hunt for Mr. Schermerhorn." (Doc. 42 at p. 11.) The undersigned has

already determined that under the totality of the circumstances, the information in Officer

Nobles' Affidavit, plus what he knew about Schermerhorn's connection to Nguyen and

participation in the October 31, 2013 trip to Blytheville made it reasonable for Officer

Nobles to believe the GPS Warrant was valid. Therefore, Schermerhorn's claim that an

unlawful GPS Warrant led to the seizure of evidence from his car on November 30, also

fails.

Insofar as Schermerhorn suggests that the Trooper's description of the traffic stop

was suspicious (Doc. 42 at p. 13), the undersigned will also examine the lawfulness of the

traffic stop.

"A pretextual traffic stop violates the Fourth Amendment." *United States v.*

*Pereira-Munoz,* 59 F.3d 788, 791 (8th Cir. 1995). "It is well established, however, that

any traffic violation, no matter how minor, provides an officer with probable cause to

stop the driver of the vehicle." *Id. See also United States v. Johnson,* 58 F.3d 356, 357

(8th Cir. 1995) (same); *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir. 1994) (en

banc) (same). "If the officer is legally authorized to stop the driver, any additional

'underlying intent or motivation' does not invalidate the stop." *Id.* (quoting *United States*

*v. Cummins,* 920 F.2d 498, 501 (8th Cir. 1990)). *See also Wren v. United States,* 517

U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Bell*, 86 F.3d 820, 822 (8th Cir. 1996) ("If the officer has probable cause to stop the [traffic] violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant."). Moreover, a traffic stop supported by probable cause "is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996).

If an officer has a right to stop a driver, the officer may "conduct an investigation 'reasonably related in scope to the circumstances that justified the interference in the first place.'" *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc) (quoting *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990)). "This reasonable investigation includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." *Id*.

"Moreover, 'if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.'" *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995) (quoting *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993)). "The officer may also ask the passenger similar questions to verify the information the driver provided." *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003) (citing *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002)).

"[A] brief drug scan [by a drug-sniffing dog] at the end of a traffic stop does not require reasonable suspicion." *United States v. Gregory*, 302 F.3d 805, 810 (8th Cir.

2002) (alterations added). "[T]he use of a well-trained narcotics-detection dog – one that 'does not expose noncontraband items that otherwise would remain hidden from public view' - - during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 125 S.Ct. 834, 838 (2005) (quoting *United States v. Place*, 462 U.S. 696, 707 (1983)) (alteration added). Further, "a canine sniff of the exterior of personal property in a public location 'is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure' that it does not constitute a 'search' within the meaning of the Fourth Amendment." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999) (quoting *Place*, 462 U.S. at 707).

Once the dog alerts to the vehicle for the presence of drug contraband, the police officer has probable cause to search the vehicle without a warrant. *United States v. Yand*, 345 F.3d 650, 656 (8th Cir. 2003); *$404,905.00 in U.S. Currency*, 182 F.3d at 647.

On November 30, 2013, Trooper Sanders observed several traffic violations by Schermerhorn, which caused him to fear that Schermerhorn's Civic was going to veer completely off the roadway. The Trooper further indicated that based on what he observed he would have definitely stopped the Civic even if he had not been asked to look for it. The undersigned finds that Trooper Sander's testimony regarding the traffic stop was credible and there is no reason to doubt his description of the traffic violations based on the fact the video of the traffic stop was not preserved. The Trooper explained that he didn't save a copy of the recording, because he had been told that Schermerhorn was going to cooperate.

Trooper Sanders also explained that he suspected Schermerhorn was carrying drugs, because he detected an odor of raw marijuana when he was communicating with Schermerhorn from the passenger side of the Civic and he also saw air fresheners which he knew to be commonly used to mask the odor of marijuana. When the Trooper was speaking with Schermerhorn in his patrol car, Schermerhorn claimed that he was coming from Sikeston, but Trooper Sanders knew that Schermerhorn was coming from Blytheville. The Trooper also noticed that although Schermerhorn's demeanor was lethargic, his carotid artery was visibly pulsating. Based on all the information Trooper Sanders had gathered at that point, he became suspicious that Schermerhorn was in fact engaged in criminal activity. The Trooper informed Schermerhorn that he had detected a strong odor of marijuana form inside his vehicle and asked Schermerhorn for consent. Consent was initially granted and then withdrawn, so Trooper Sanders deployed his canine to conduct an exterior sniff of the Civic. That sniff resulted in the canine alerting and the seizure of both marijuana and methamphetamine. Trooper Sanders found additional air fresheners in the trunk and although some of the packaging for the marijuana was vacuum sealed, one small bag was not sealed, which further explains the smell of raw marijuana detected by Trooper Sanders when he initially made contact with Schermerhorn.

The undersigned finds that the traffic stop and subsequent canine sniff of Schermerhorn's Civic were conducted in accordance with the law. Schermerhorn's Motion to Suppress the evidence based on an allegation that the traffic stop was unlawful should be denied.

**II.D.  The Defendant's Statements are admissible at trial.**

Although Schermerhorn does not specifically request that his statements be suppressed as the fruit of the GPS Warant,[4] the undersigned examines whether the admissions he made following the traffic stop and his arrest are admissible at trial. "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'"  *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011), quoting *Segura v. United States*, 468 U.S. 796, 804 (1984). "[T]he defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence."  *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007).

In this case, because the attachment of the GPS device to Schermerhorn's vehicle and the subsequent stop of his vehicle on November 30, 2013 did not violate Schermerhorn's constitutional rights, his admissions were not fruit of the poisonous tree. *See United States v. Goodale*, 738 F.3d 917, 922 (8th Cir. 2013).  Schermerhorn did not argue that his statements were involuntary or that there was a violation of *Miranda v. Arizona*, 384 U.S. 436, 448-450 (1966), so those issues are not considered.

---

[4]     Schermerhorn makes a blanket request for the suppression of evidence as follows: "suppress[ ] all evidence seized and obtained from the use of the GPS device. . ."  (Doc. 42 at p. 13.)

### III. Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Evidence [Doc. 32] be **denied**.

Further, the parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of November, 2014.